UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C.C., AS ASSIGNEE, C.L.C., AS ASSIGNEE, S.C., AS ASSIGNEE, G.F., AS ASSIGNEE, C.H., AS ASSIGNEE, LAURA KIM, AS ASSIGNEE AND GUARDIAN FOR R.K., AS ASSIGNEE, C.C.M., AS ASSIGNEE, D.A.M., AS ASSIGNEE, R.N., AS ASSIGNEE, J.R., AS ASSIGNEE, B.A.T., AS ASSIGNEE, B.L.T., AS ASSIGNEE, S.W., AS ASSIGNEE, M.A., AS ASSIGNEE, J.B., AS ASSIGNEE, J.W., AS ASSIGNEE, D.Q.M., AS ASSIGNEE, Brian Frazier, AS ASSIGNEE AND GUARDIAN FOR K.F., J.H, AS ASSIGNEE, and A.L., AS ASSIGNEE,

Plaintiffs,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, FEDERAL INSURANCE COMPANY, TRANSAMERICA INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, AND FIREMAN'S FUND INSURANCE COMPANY,

Defendants.

Case No. 3:24-cv-05535-TMC

ORDER GRANTING DEFENDANT FIREMAN'S FUND INSURANCE COMPANY AND DEFENDANT TRANSAMERICA INSURANCE COMPANY'S MOTIONS TO DISMISS

## I INTRODUCTION

This action arises from allegations of physical and sexual abuse at a foster home during the 1980s and 1990s. Plaintiffs, the alleged victims, settled six underlying lawsuits against the former executive director and assistant executive director of Kiwanis Vocational Home ("KVH"), the foster home at issue and a service project of Kiwanis International. Following the settlement, Plaintiffs—as assignees of the alleged insureds—sued seven insurance companies they claim issued policies to Kiwanis International during the relevant period. Plaintiffs advance claims of Declaratory Judgment, breach of contract, negligence, bad faith, violations of the Washington Consumer Protection Act ("CPA") and violations of the Washington Insurance Fair Conduct Act ("IFCA"). Before the Court is Defendant Fireman Fund Insurance Company's ("FFIC") Motion to Dismiss the claims against it in Plaintiff's Amended Complaint ("Complaint"). Dkt. 36; Fed. R. Civ. P. 12(b)(6). Also before the Court is Defendant TIG Insurance Company's, formerly known as Transamerica Insurance Company ("TIG"), Motion for Judgment on the Pleadings. Dkt. 51; Fed. R. Civ. P. 12(c). Having reviewed the parties' pleadings and briefs (Dkt. 5, 36, 44, 48, 51, 64, 67), and the balance of the record, the Court GRANTS FFIC's and TIG's motions to dismiss. Plaintiffs' claims against FFIC and TIG are DISMISSED WITHOUT PREJUDICE.

## II BACKGROUND

Plaintiffs are twenty individuals who allege they were physically and sexually abused during the 1980s and 1990s at KVH, a group foster home for boys near Centralia, Washington. Dkt. 5 ¶¶ 1.1; 4.16–4.17. KVH was a service project for multiple local and national Kiwanis clubs, including Kiwanis International. *Id.* ¶ 4.16. Plaintiffs allege that Charles McCarthy and Guy Cornwell were the executive director and assistant executive director, respectively, of the home and were responsible for their safety when they were abused. *Id.* ¶¶ 1.1–1.3.

Plaintiffs asserted claims against McCarthy, Cornwell, KVH, and Kiwanis International in six underlying lawsuits. *Id.* ¶¶ 1.4; 4.26. In October 2022, Plaintiffs entered into a covenant judgment settlement agreement ("Covenant Agreement") with McCarthy's estate[1] and Cornwell to settle the underlying claims against them for $65,130,000. *Id.* ¶ 4.54. Following a reasonableness hearing, the trial court reduced the Covenant Agreement judgment to $21,251,250. *Id.* ¶¶ 4.57; 4.62. Plaintiffs have appealed the trial court's reduction to the Washington Court of Appeals. *Id.* ¶ 4.63.

Defendants are seven insurance companies ("Insurers"), including FFIC and TIG, that Plaintiffs allege issued various insurance policies to Kiwanis International during the relevant period. Plaintiffs also allege that McCarthy and Cornwell were insured under the policies. *Id.* ¶¶ 4.1–4.15.

Kiwanis International contracted with FFIC to provide excess liability coverage from November 1, 1991 to November 1, 1992. *Id.* ¶ 4.14; Dkt. 37-1 at 2.[2] The policy provides third-level indemnity coverage and, according to its terms, applies "(a) only in excess of all Underlying Insurance, and (b) only after all Underlying Insurance has been exhausted by payment of the limits of such insurance." Dkt. 37-1 at 5, 15. Kiwanis International's underlying insurance limit, before excess coverage applies, is $35 million. Dkt. 37-1 at 2.

---

[1] McCarthy died in 2020 and was defended in the underlying lawsuits by representatives of his estate. *Id.* ¶ 1.4; 4.51.

[2] The Court may consider the insurance policy FFIC attaches to its Motion to Dismiss. *See Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 884 (9th Cir. 2022) (when considering a motion to dismiss, courts "may consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, as well as any writing referenced in [the] complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.") (cleaned up). Plaintiffs rely on FFIC's policy in their Complaint, Dkt. 5 ¶ 4.14, and do not dispute its authenticity. *See* Dkt. 44 at 3, n.1.

Kiwanis International also contracted with TIG to provide excess liability coverage from November 1, 1990 to November 1, 1991. Dkt. 5 ¶ 4.10; Dkt. 52-1 at 3.[3] Like FFIC's excess policy, there are two underlying layers of coverage beneath the TIG policy. *See* Dkt. 52-1 at 3-4. The policy states that TIG "will pay on your behalf the Limits of Insurance, for the ultimate net loss, in excess of the Underlying Limits of Insurance[.]" *Id.* at 8. As with FFIC, Kiwanis International's underlying insurance limit is $35 million. *Id.* at 3.

Plaintiffs assert claims in this action as assignees of Cornwell and the estate of McCarthy. *Id.* ¶ 1.4. Plaintiffs filed seven causes of action against all defendant Insurers: Declaratory Judgment, breach of contract, negligence, bad faith, violations of the CPA and IFCA, and punitive damages. *Id.* ¶¶ 5.1-11.1. Plaintiffs' specific allegations against FFIC and TIG are identical:

- "Plaintiffs sent multiple demands to settle the claims asserted against McCarthy and Cornwell within the limits of the FFIC Policy." *Id.* ¶ 4.47; *see also id.* ¶ 4.41 (". . . within the limits of the TIG policy.").
- "FFIC conducted an unreasonable investigation and placed its own financial interests ahead of McCarthy's and Cornwell's when it unreasonably refused to settle the claims asserted against them within the limits of the FFIC Policy." *Id.* ¶ 4.48. *see also id.* ¶ 4.42 ("TIG conducted an unreasonable investigation . . . .").
- "FFIC's unreasonable investigation and breach of the duty to settle exposed McCarthy and Cornwell to judgments that would far exceed the FFIC Policy's limits." *Id.* ¶ 4.49; *see also id.* ¶ 4.43 ("TIG's unreasonable investigation . . . .").

[3] As above, the Court can properly consider TIG's policy attached to its Motion to Dismiss because the Complaint relies on TIG's policy, Dkt. 5 ¶ 4.10, and Plaintiffs do not dispute its authenticity. *See* Dkt. 64 at 3, n.1; *Mendoza*, 30 F.4th at 884.

FFIC argues under Rule 12(b)(6) that each of Plaintiffs' claims fails as a matter of law because Plaintiffs have not exhausted the $35 million in underlying primary insurance to trigger excess coverage. Dkt. 36 at 2–3. FFIC points to Plaintiffs' Complaint, asserting just over $21 million in consent judgments, showing "Plaintiffs have not—and indeed, cannot—allege this critical prerequisite for coverage under the Policy[.]" *Id.* at 2; Dkt. 5 ¶ 4.64. TIG argues similarly under Rule 12(c) that Plaintiffs' claims are unripe because they have failed to exhaust the underlying coverage limit. Dkt. 51 at 1–2.

In their opposition briefs, Plaintiffs concede that their damages claims against the movants for all but the declaratory judgment action "appear to be unripe due to lack of exhaustion of the underlying insurance policies." Dkt. 44 at 3, n.1; Dkt. 64 at 3, n.1. Plaintiffs ask the Court to stay these claims, or in the alternative, dismiss them without prejudice. *Id.* But Plaintiffs contend that their request for a declaratory judgment on coverage under FFIC and TIG's excess insurance policies, respectively, is ripe. Dkt 44 at 3–4; Dkt. 64 at 3–4. The motions to dismiss are fully briefed and ready for the Court's consideration.

## III DISCUSSION

### A. Legal standards

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The legal standard for Rule 12(c) is "substantially identical" to the standard for a motion to dismiss under Rule 12(b)(6) because under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."[4] *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation marks and citation omitted).

As with a motion to dismiss, to survive a motion for judgment on the pleadings, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of*

[4] Motions to dismiss and motions for judgment on the pleadings differ in only two respects: "(1) the timing (a motion for judgment on the pleadings is usually brought after an answer has been filed, whereas a motion to dismiss is typically brought before an answer is filed), and (2) the party bringing the motion (a motion to dismiss may be brought only by the party against whom the claim for relief is made, usually the defendant, whereas a motion for judgment on the pleadings may be brought by any party)." *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F. Supp. 2d 898, 902–03 (S.D. Cal. 2004), *opinion clarified sub nom. Sprint Tel. PCS, L.P. v. County of San Diego*, No. 03-CV-1398-K(LAB), 2004 WL 859333 (S.D. Cal. Jan. 23, 2004) (internal citation omitted).

*Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, in a case alleging the same claims against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group. *Trusov v. Oregon Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251, at *2 (D. Or. Sept. 20, 2023); *see In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole.") (cleaned up).

**B. Plaintiffs' Declaratory Judgment Act claim against FFIC and TIG is not ripe.**

Plaintiffs' request for a declaratory judgment on FFIC and TIG's coverage obligations under their excess insurance policies does not present a justiciable case or controversy. Under the Declaratory Judgment Act, "in a case of actual controversy," a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). A court, therefore, has jurisdiction to award declaratory relief "only in a case of actual controversy." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (citation omitted). The actual controversy requirement of the Declaratory Judgment Act "is the same as the 'case or controversy' requirement of Article III of the United States Constitution." *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991) (citation omitted). Whether Plaintiffs' declaratory judgment action presents a justiciable case or controversy requires the Court to "consider whether the facts alleged . . . show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Shell Gulf of Mex.,*

*Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (citation omitted); *see also Aydin Corp.*, 940 F.2d at 528 ("In order for a case to be justiciable under Article III of the Constitution, it must be ripe for review.").

Although a dispute between an insurer and its insured over the duties imposed by an insurance policy generally "satisfies Article III's case and controversy requirement," *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 n. 2 (9th Cir. 1998), "an insurance dispute may be insufficiently ripe to qualify as a proper case or controversy." *Century Indem. Co. v. Marine Grp.*, LLC, 848 F. Supp. 2d 1229, 1234–35 (D. Or. 2012). In determining whether contingencies inherent to insurance disputes, such as the size of the potential damage award, "are so great that they preclude the existence of an actual case and controversy between the parties, courts must attempt to balance two competing interests, namely (1) the Declaratory Judgment Act's purpose of enabling the early and comprehensive resolution of disputes and (2) considerations of judicial economy and restraint." *Seattle Times Co. v. Nat'l Sur. Corp.*, C13-1463RSL, 2016 WL 3033498, at *3 (W.D. Wash. May 27, 2016) (citation omitted).

In this declaratory judgment action, there is another contingency—Defendants are excess insurers. "The critical and distinctive feature of an excess insurance policy is that it provides coverage only after the primary coverage is exhausted." *Quellos Grp. LLC v. Fed. Ins. Co.*, 177 Wn. App. 620, 633, 312 P.3d 734 (2013) (internal quotation omitted). "There is no clear consensus as to whether a claim against an excess insurer is ripe for adjudication where the underlying primary policies have not yet been exhausted." *Century Indem. Co.*, 848 F. Supp. 2d at 1235. "Although there is no hard and fast rule, courts generally find that a claim against an excess insurer is ripe for adjudication if there is a substantial, reasonable, and/or practical likelihood that the dispute will trigger the excess policies." *Seattle Times*, 2016 WL 3033498, at *3 (collecting cases).

Here, it is undisputed that the primary policies underlying the excess coverage issued by FFIC and TIG have not been exhausted. Dkt. 36 at 2; Dkt. 44 at 3, n.1; Dkt. 51 at 1–2; Dkt. 64 at 3, n.1. "The Court's task, therefore, is to ascertain whether the likelihood that the excess policies will be triggered is sufficient to confer jurisdiction with respect to this request for declaratory judgment." *Seattle Times*, 2016 WL 3033498, at *4. Plaintiffs admit that as of December 30, 2022, the primary policies contained at least $26,923,101 in remaining coverage below the FFIC policy's attachment point during its relevant coverage year (1991–1992) and $30,364,658.50[5] below the TIG policy's attachment point during its relevant coverage year (1990–1991). *See* Dkt. 45 at 183; Dkt. 44 at 9; Dkt. 48 at 6; Dkt. 64 at 8–9; Dkt. 67 at 4. Even if Plaintiffs could assign the entirety[6] of the Covenant Agreement judgment—$21,251,250—to the relevant coverage year for either FFIC or TIG, Plaintiffs would still be more than $5 million from triggering the excess liability policy of FFIC and nearly $10 million from reaching the excess policy of TIG. *See* Dkt. 45 at 183.

Plaintiffs argue that the ruling in *Seattle Times* supports finding the "requisite likelihood that the excess policies will be triggered." Dkt. 44 at 16; *see also* Dkt. 64 at 14–15. In that case, environmental contamination had been found on the former property of the Times. *Seattle Times*, 2016 WL 3033498, at *2. Primary insurance policies provided $10.5 million in coverage and at

---

[5] Plaintiffs appear to have miscalculated the total coverage remaining below TIG's policy as "30,664,658.50," despite including accurate figures from the declarations of the primary insurers. *See* Dkt. 64 at 9; Dkt. 45 at 183.

[6] TIG contends that the judgment attributable to TIG's policy period is a fraction of the total because only some Plaintiffs resided at KVH during the relevant policy period (11/1/1990 to 11/1/1991). Dkt. 51 at 4–5; Dkt. 67 at 4. n. 4. For purposes of TIG's (and FFIC's) motions to dismiss, it is unnecessary for the Court to resolve this allocation question. *See Tocci Bldg. Corp. of New Jersey v. Virginia Sur. Co.*, 750 F. Supp. 2d 316, 323 (D. Mass. 2010) (citations omitted) ("Courts have refrained from making a detailed examination of the policy terms and exclusions when determining whether there is a 'practical likelihood' that the primary limit could be exceeded.").

the time of the suit, the Times had spent or received demands for around $9.1 million in cleanup costs. *Id.* at *1, 2. Expert testimony estimated an additional $1.075–$1.5 million more in federal cleanup costs, and the possibility of millions more if off-site contamination had to be remediated. *Id.* at *4. The Times sought declaratory relief establishing its rights and duties under several insurance policies, including an excess insurance policy issued by the defendant National Surety. *Id*. at *1. Although the limits underlying the Times' excess policy had not yet been exhausted, the Court found a "substantial likelihood that National Surety's policy will be triggered." *Id.* at *4. Because of this substantial likelihood, the Court also found that National Surety's continued participation would "promote[] judicial economy and the just, speedy, and comprehensive resolution of this dispute." *Id.*

Although *Seattle Times* is persuasive that exhaustion of primary insurance is not a prerequisite to seek declaratory relief against an excess insurer, this action is distinguishable. In *Seattle Times*, nearly 90 percent of the primary policy had been exhausted at the time of the suit and evidence showed that remediation costs would soon surpass the remaining underlying insurance. *See id.* at *1, 2, 4. Here, Plaintiffs' allegations do not show an equivalent "likelihood" of exhaustion. *See id.* at *3. At the time of this suit, less than 80 percent of the primary insurance policy against FFIC's coverage year was exhausted, while only 70 percent of primary insurance was exhausted against TIG's coverage year. *See* Dkt. 45 at 183. Unlike the expected ongoing remediation costs in *Seattle Times* that showed a "substantial likelihood that National Surety's policy will be triggered," Plaintiffs do not plead facts demonstrating the insureds' expected liability beyond the Covenant Judgment. *See* 2016 WL 3033498, at *4; *compare Fed. Deposit Ins. Corp. v. Arch Ins. Co.*, CV C14-0545RSL, 2017 WL 5461360, *3–4 (W.D. Wash. Nov. 13, 2017) (finding a "substantial likelihood" that defendants' excess policies would be triggered when plaintiffs alleged in the complaint and produced evidence that the remaining $49 million in

coverage below defendants' excess coverage would be surpassed by nearly $3 million); *with Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1503–04 (9th Cir. 1994) (rejecting plaintiff's appeal for declaratory relief against excess insurers where plaintiff's aggregate primary coverage totaled $36 million and the underlying claims against it had settled for $14.5 million).

Plaintiffs offer two arguments that they have pled facts showing a "substantial likelihood" that the excess policies will be triggered. First, in their opposition to the motions to dismiss, Plaintiffs argue that several pending cases involving abuse allegations against alleged insureds under the primary policies "demonstrate[] a practical likelihood of exceeding [the] attachment point in the future." Dkt. 64 at 18–19, 8–11; Dkt. 44 at 17, 8–11. To support these allegations, Plaintiffs submit hundreds of pages of materials not referenced in the Complaint. *See* Dkt. 45; Dkt. 65. Plaintiffs' argument is unavailing for two reasons. As a threshold matter, Plaintiffs' materials cannot be considered on a 12(b)(6) motion to dismiss. In reviewing a 12(b)(6) motion, a court may consider documents outside the complaint only if all three of the following criteria are met: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Here, Plaintiffs cannot proceed beyond the first criterion because the documents they submitted regarding the related cases were not referenced in the Complaint. *See generally* Dkt. 5. And even if these opposition materials were considered at the pleading stage, Plaintiffs cannot show a "likelihood" of exhaustion by pointing the Court to other pending cases involving different parties that may implicate coverage rights in the future. *See Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Second, Plaintiffs argue that because their Complaint alleged error by the state trial court in reducing the Covenant Judgment amount—from $65,130,000 to $21,251,250—the Court must

accept this allegation as true, triggering Defendants' excess policies. Dkt. 64 at 17–18; *see* Dkt. 44 at 16–17. But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Plaintiffs' assertion that the state trial court "erred" is a legal conclusion not accepted as true at the pleading stage. *See id;* Dkt. 5 ¶ 4.62. Given Plaintiffs cannot show the "likelihood" that the primary policies will be exhausted, Plaintiffs' other arguments that FFIC and TIG's continued participation in the case would promote judicial economy are premature. *See* Dkt. 44 at 4, 17; Dkt. 64 at 4, 20–21; *Seattle Times*, 2016 WL 3033498, at *4 ("In light of the substantial likelihood that National Surety's policy will be triggered . . . [its] continued participation and concomitant ability to protect its interests is not unfair compared to the likely unfairness and inefficiencies . . . if it were dismissed."). Because at this time there is no "substantial, reasonable, and/or practical likelihood that the dispute will trigger the excess policies," Plaintiffs' declaratory judgment actions against FFIC and TIG are not justiciable. *See Seattle Times*, 2016 WL 3033498, at *3.

**C. Plaintiffs' other claims against FFIC and TIG are also not ripe.**

Plaintiffs' other causes of action against FFIC and TIG are also not justiciable. Plaintiffs ask the Court to stay their remaining damages claims—negligence, bad faith, breach of contract, and violations of the IFCA and CPA —which they concede are unripe as applied to the excess insurers. Dkt. 44 at 3–4, n.1; Dkt. 64 at 3, n.1. But ripeness is a jurisdictional requirement under Article III, and the Court cannot stay claims over which it lacks jurisdiction.

Instead, all claims against FFIC and TIG must be dismissed without prejudice. "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990). Because Plaintiffs' damages claims and declaratory judgment action are unripe, the Court dismisses all claims

against FFIC and TIG without prejudice. *See Seattle Times*, 2016 WL 3033498, at *3; *see also 18 Unnamed John Smith Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir. 1989).

**IV CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant FFIC's 12(b)(6) Motion to Dismiss, Dkt. 36, and TIG's 12(c) Motion to Dismiss, Dkt. 51. Plaintiffs' claims against FFIC and TIG are DISMISSED WITHOUT PREJUDICE.

Dated this 10th day of January, 2025.

Tiffany M. Cartwright
United States District Judge