UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SCOTT KEE, et al.,<br><br>      Plaintiffs,<br>  v.<br><br>UNITED STATES FIDELITY & GURANTY COMPANY, et al.,<br><br>      Defendants. | Case No. 3:24-cv-05535-TMC<br><br>ORDER ON PLAINTIFFS' MOTION TO COMPEL (DKT. 109) |

  This matter comes before the Court on plaintiffs' motion to compel documents being withheld based on assertions of privilege by defendants United States Fidelity & Guaranty Company ("USF&G"), Insurance Company of North American and Federal Insurance Company (together "Chubb"), and Granite State Insurance Company ("GSIC") (together, "Defendants"). Dkt. 109. Plaintiffs, alternatively, request that the Court conduct an *in camera* review of the documents being withheld or appoint a special master (at the expense of plaintiffs) to conduct an *in camera* review. Dkt. 109. Because plaintiffs proposed the appointment of a special master for the first time in their reply brief, the Court granted defendants an opportunity to file a joint response to plaintiffs' request prior to oral argument; plaintiffs filed a reply to defendants' joint response. Dkts. 131, 132, 133.

  This motion was referred by the Honorable Tiffany M. Cartwright. As discussed below, the Court defers ruling on the motion and ORDERS the parties to meet and

ORDER ON PLAINTIFFS' MOTION TO COMPEL (DKT. 109) - 1

confer on a stipulated ESI agreement and a stipulated privilege log protocol to refine and clarify the privilege logs as to the contested documents for the existing discovery and future discovery.

## BACKGROUND

Plaintiffs are former residents of the Kiwanis Vocational Home ("KVH"). Charles McCarthy (now deceased) ("McCarthy") and Guy Cornwell ("Cornwell") were employed by Lewis County Youth Enterprises ("LCYE"), the corporate entity that operated KVH. *See* Dkt. 5, Amended Complaint. Plaintiffs brought five underlying lawsuits (the "Underlying Actions") in Washington Superior Court against the State of Washington, the LCYE Employees, and Kiwanis International, as well as certain Kiwanis clubs and districts (together, Kiwanis International and the Kiwanis clubs and districts are referred to as "Kiwanis"). *See id.* at p. 8.

McCarthy and Cornwell tendered claims to the Defendants in March 2019 and June 2019, respectively. *See* Dkts. 5 at 11; Dkt. 90 at Exhibits 60, 61, 63, 66, 67. USF&G sent a letter to McCarthy on June 18, 2019, and to Cornwell on July 9, 2019, denying a legal defense and indemnity. USF&G denied coverage to McCarthy and Cornwell as they did not qualify as insureds under the USF&G Policies with respect to the underlying claims. Dkt. 90-12 at Exhibits 60, 61. USF&G assigned a senior claims adjuster, Edward Zawitoski, to adjust the claims in the Underlying Actions. *Id.* Scott Myers was USF&G's in-house attorney. Dkt. 116 at Exhibit 1.

Granite State and Chubb agreed to defend McCarthy and Cornwell under a reservation of rights. Dkt. 90 at Exhibits 62, 63, 64, 65, 66, 67. Chubb retained attorneys

Christopher A. Wadley and Jonathan Toren. Dkts. 118, 119. Granite State retained attorney Gabriel Baker. Dkt. 114.

Plaintiffs settled the Underlying Actions with Cornwell and McCarthy only, not with Kiwanis. *Id.* at p. 2. The settlement agreement assigned Cornwell's and McCarthy's purported rights with respect to the five Underlying Actions against insurers under policies issued to Kiwanis. *Id.* In July 2024, plaintiffs filed this action against various Kiwanis insurers as assignees of McCarthy's and Cornwell's purported claims against insurers related to policies issued by defendants to Kiwanis with respect to the Underlying Actions. Dkt. 1. The Underlying Actions remain ongoing.

## DISCUSSION

In response to plaintiffs' discovery requests, defendants withheld communications with their respective coverage counsel and their coverage counsels' work product[1]. Defendants provided privilege logs detailing their redactions. Dkt. 109 at 73-977. Plaintiffs brought this motion to compel claiming that defendants are improperly withholding documents under attorney-client privilege and the work product doctrine.

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If requested

---

[1] The declaration of Darrell Cochran filed in support of plaintiffs' motion to compel details the communication history between counsel for plaintiffs and defendants relating to the exchange of discovery. Dkt. 110.

ORDER ON PLAINTIFFS' MOTION TO COMPEL (DKT. 109) - 3

1  discovery is not answered, the requesting party may move for an order compelling the
2  discovery. Fed. R. Civ. P. 37(a)(1).
3        Plaintiffs' motion to compel primarily relates to documents and information
4  defendants withheld on the basis of attorney-client privilege and the work product
5  doctrine. As a federal court sitting in diversity, the Court applies state law to substantive
6  issues and federal law to procedural issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64,
7  78–79 (1939). *See also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427
8  (1996); *State Farm Fire & Casualty Co. v. Smith*, 907 F.2d 900, 902 (9th Cir. 1990). The
9  attorney-client privilege is governed by state substantive law, whereas the work product
10 doctrine is governed by federal procedural law. *See Lexington Ins. Co. v. Swanson*, 240
11 F.R.D. 662, 666 (W.D. Wash. 2007). The party resisting production bears the burden of
12 persuading the Court that the attorney-client privilege or work product doctrine shield
13 the requested information from discovery. *See* Fed. R. Civ. P. 26(c); *see also*
14 *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).
15       Plaintiffs rely on the framework established by the Washington Supreme Court in
16 *Cedell v. Farmers Ins. Co. of Washington* to argue that the attorney client privilege does
17 not apply to many of the communications defendants have withheld or redacted. 176
18 Wn. 2d 686, 699 (2013).
19   A. Attorney-Client Privilege
20       The attorney-client privilege protects confidential disclosures made by a client to
21 an attorney when obtaining legal advice, as well as the attorney's advice in response to
22 such disclosures. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).
23 Applying Washington law, the Court considers attorney-client privilege in first-party bad

ORDER ON PLAINTIFFS' MOTION TO COMPEL (DKT. 109) - 4

faith insurance cases under the framework established by the Washington Supreme Court's decision in *Cedell*.

In that case, the Washington Supreme Court held that an insurer owes its first party insured a quasi-fiduciary duty to investigate and adjust the insured's claim in good faith. *Id.* at 696. When the insured contends that this duty has been breached, the insured should have access to the entire claim file, and the insurer should not be permitted to refuse production "because of the participation of lawyers hired or employed by the insurers...." *Id.* The Court held, a blanket privilege "would unreasonably obstruct discovery of meritorious claims and conceal unwarranted practices." *Id.* at 696–97.

Under *Cedell*, this Court begins with the "presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process," and that the attorney-client privilege is "generally not relevant." *Id.* at 699. An insurer may overcome this "presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law." *Id.* But even if the insurer overcomes the presumption of discoverability, an insured may still overcome the assertion of attorney-client privilege by showing "a reasonable person would have a reasonable belief that an act of bad faith tantamount to civil fraud has occurred" and by demonstrating "a foundation to permit a claim of bad faith to proceed." *Id.* at 700.

A mere allegation or claim of bad faith, or an honest disagreement as to coverage between the insurer and the insured, will not waive attorney-client privilege

ORDER ON PLAINTIFFS' MOTION TO COMPEL (DKT. 109) - 5

1   under this standard. *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611-JLR, 2014
2   WL 2526901, at *5 (W.D. Wash. May 27, 2014); *MKB Constructors v. Am. Zurich Ins.*
3   *Co.*, No. C13-0611-JLR, 2014 WL 3734286, at *7 (W.D. Wash. July 28, 2014).

4       In reviewing a *Cedell* issue, a federal court may exercise its discretion to conduct
5   an *in camera* review of the disputed documents to determine the capacity in which the
6   attorney was acting. *MKB Constructors*, 2014 WL 2526901, at *7. Alternatively, the
7   Court may adopt an equally or more appropriate procedure or mechanism, such as
8   through review of a "privilege log, affidavit, declaration, or in any other manner
9   permissible in federal court." *Id.*

10    B.  Work Product Doctrine

11      The work product doctrine protects from discovery "documents and tangible
12  things that are prepared in anticipation of litigation or for trial by or for another party or
13  its representative." Fed. R. Civ. P. 26(b)(3)(A). *Cedell* does not apply to documents
14  withheld as work product. *MKB Constructors*, 2014 WL 2526901, at *8 (emphasis
15  added). Instead, the work product doctrine is governed by Federal Rule of Civil
16  Procedure 26(b)(3) and applicable federal case law. *Id.* ("Although the attorney-client
17  privilege is a substantive evidentiary privilege, the work product doctrine is a procedural
18  immunity governed by [Rule] 26(b)(3).")

19      The work product doctrine only applies to documents prepared in anticipation of
20  litigation; if a document would have been created in substantially similar form in the
21  normal course of business, work product protection would not apply to such a business
22  document -- even if litigation is anticipated. *In re Grand Jury Subpoena (Mark Torf)*, 357
23  F.3d 900, 908 (9th Cir. 2004).

ORDER ON PLAINTIFFS' MOTION TO COMPEL (DKT.
109) - 6

1        When a document serves a dual purpose—i.e., the document was not prepared

2 *exclusively* for litigation—the Ninth Circuit applies the "because of" standard. *Id.* at 907.

3 Under this standard, dual purpose documents are deemed prepared because of

4 litigation if "in light of the nature of the document and the factual situation in the

5 particular case, the document can be fairly said to have been prepared or obtained

6 because of the prospect of litigation." *Id.* (citation omitted). In applying the "because of"

7 standard, courts do not consider "whether litigation was a primary or secondary motive

8 behind the creation of a document." *Id.* at 908. Instead, courts consider the totality of the

9 circumstances to determine whether the "document was created because of anticipated

10 litigation and would not have been created in substantially similar form but for the

11 prospect of litigation." *Id.* (citation omitted).

12        Even if documents are prepared in anticipation of litigation, they still may be

13 subject to discovery if the requesting party shows "substantial need" for the materials

14 and the inability to obtain their equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii).

15 When a court orders disclosure of work product under this standard, however, "it must

16 protect against disclosure of the mental impressions, conclusions, opinions, or legal

17 theories of a party's attorney or other representative concerning the litigation." Fed. R.

18 Civ. P. 26(b)(3)(B). Such materials, known as "opinion," work product, represent the

19 "core types of work product" the doctrine was designed to protect. *Republic of Ecuador*

20 *v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014).

21        In a first-party bad faith insurance action, the insured may still be able to obtain

22 "opinion" work product; but, doing so requires a "showing beyond the substantial

23 need/undue hardship test required for non-opinion work product." *Barge v. State Farm*

*Mut. Auto. Ins. Co.*, No. C16-0249-JLR, 2016 WL 6601643, at *5 (W.D. Wash. Nov. 8, 2016) (cleaned up). The insured must demonstrate that the "mental impressions are at issue and their need for the material is compelling." *Id.* (cleaned up). "At a minimum, compelling need requires that the information sought is not available elsewhere or through the testimony of another witness." *Id.*

### C. Current Dispute

Plaintiffs assert defendants' attorneys (Christopher Wadley, Jonathan Toren, Gabriel Baker, and Scott Meyers) were engaged in quasi-fiduciary tasks of investigating and evaluating or processing the claims, and therefore, the attorney client privilege does not apply. As for work product protection, plaintiffs assert the claims files, including notes and documents that comprise the claims file, should not be protected by the work product doctrine because the documents would have been created regardless of the pending litigation.

Plaintiffs assert that defendants did not split claims files for McCarthy and Cornwell, and only one monolithic file was kept to document, adjust, and settle the Kiwanis, McCarthy, and Cornwell claims together.

Therefore, plaintiffs argue, the documentation of the carriers' investigative steps, evaluation efforts, and settlement efforts as to each claimant are extensively comingled, and defendants are withholding any information that has a bearing on claims against Kiwanis, resulting in heavily redacted claims notes and thousands of withheld communications that could be relevant. Plaintiffs ask that the Court either conduct an *in camera* review of the contested documents or appoint a special master to conduct an *in camera review*.

1    Defendants, on the other hand, allege they established by declarations and sworn testimony that their respective retained counsel, who were involved in the Underlying Litigations, were engaged solely to provide legal advice on coverage and potential liability in bad faith litigation. Defendants assert they cannot produce communications between Kiwanis' defense counsel and the insurers because the Underlying Actions are ongoing, and Kiwanis has a reasonable expectation that the communications between Kiwanis' defense counsel and Kiwanis' insurers will be confidential[2]. Defendants request that the Court first resolve the parties' fundamental, legal disagreements regarding whether legal advice on coverage and potential liability in bad faith litigation is privileged under *Cedell* and whether plaintiffs can obtain Kiwanis's work product in the Underlying Actions.

The Court, at this time, finds it is premature for either the Magistrate Judge on referral, or a special master, to conduct an *in camera* review. Further, given the information provided by the parties in their briefing, the Court cannot make a blanket ruling of the application of *Cedell* to the contested documents and communications at this time.

First, the privilege logs produced by defendants do not enable the Court to assess whether the redacted information strictly involves the provision of coverage counsel or other legal advice (and is therefore privileged), or whether it pertains to quasi-fiduciary tasks undertaken by counsel in investigating, evaluating, and processing the claims.

---

[2] Defendants raised similar arguments in their motion to stay (Dkt. 56, 59, 60, 61), which was denied. Dkt. 74.

ORDER ON PLAINTIFFS' MOTION TO COMPEL (DKT. 109) - 9

1        Plaintiffs attached defendants' privilege logs to their moving papers and broadly
2 claim that documents have been improperly withheld by defendants. Plaintiffs attach
3 their own chart of contested documents, which includes the document identification
4 number, whether the document was redacted or withheld, and whether the document
5 was withheld or redacted on attorney-client-privilege or work-product grounds. Dkt. 109
6 at 20. Plaintiffs did not assert, however, any specific deficiencies in the content or
7 organization of defendants' privilege logs in a manner that allows the Court to discern
8 the privilege or work product analysis for each document or category of documents.
9        Plaintiffs' argument is broad because they are receiving a large volume of
10 documents and extensive privilege logs. Because of this, the Court asked the parties
11 whether they have an agreed-upon ESI protocol or whether the parties agreed on the
12 format, ways of categorizing documents and allegations of privilege or work product, or
13 amount of detail, for their privilege logs prior to producing them. The parties stated they
14 have not conferred on either protocol.
15        This Court has broad latitude to and manage discovery disputes, like ESI
16 protocols. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206,
17 1211–12 (9th Cir. 2002); *see also Crosby v. Amazon.com, Inc.*, 2022 WL 522953, at *1
18 (W.D. Wash. Feb. 22, 2022) ("[b]ecause the parties are unable to come to an
19 agreement regarding all terms contained within an ESI discovery agreement, the Court
20 will, in its discretion, assist the parties in doing so.").
21        The factual allegations and discovery issues in this case are characterized by the
22 parties as "moderately complex". Dkt. 54, Joint Status Report and Discovery Plan, at 2.
23 In their initial discovery plan, the parties identified privilege issues as being a serious

concern, and they agreed to meet and confer about appropriate ESI protocols. *Id.* at 3-4, 6. The parties stipulated to a protective order for designating certain documents or information confidential; this agreement does not include any provisions for the parties to follow in preparing a privilege log. Dkt. 78.

In their motion to compel, the plaintiff has identified legal issues that establish a need for a stipulated ESI protocol and a stipulated protocol on what information should be provided on the privilege logs, including, but not limited to, a clear indication of which documents arguably would present a *Cedell* context for deciding whether attorney-client privilege applies, and which documents arguably contain information raising a work product issue[3]. Dkt. 109 at 8-12. Once the parties meet and confer on these protocols and provide the Court an ESI protocol and privilege logs protocol, then objections to entries in those privilege logs can meaningfully be argued, and the Court can decide whether in camera review is appropriate, consider whether to sample a subset of the documents, and consider whether appointment of a special master is warranted.

Therefore, the Court defers ruling on plaintiffs' motion to compel and ORDERS the parties to meet and confer on a stipulated ESI agreement and a protocol to modify the privilege logs to add clarity as to the context of the information for which attorney-client privilege or work product protection is claimed in the contested documents. The parties are ORDERED to file with the Court, on or before December 15, 2025, their stipulated ESI agreement and stipulated agreement on the format and specificity of the privilege logs -- including agreed-upon modification of existing privilege logs and

---

[3] The Court has a model ESI agreement on its website that the parties can adopt. ModelESIAgreement.pdf. For guidance concerning privilege logs, the Court refers the parties to The Sedona Conference, *Commentary on Privilege Logs*, 25 SEDONA CONF. J. 543 (2024).

ORDER ON PLAINTIFFS' MOTION TO COMPEL (DKT. 109) - 11

expectations for the privilege logs that are exchanged in future discovery. If the parties cannot agree on an ESI protocol or a privilege log protocol, the parties shall prepare a joint status report stating whether there are areas of agreement, identifying any such areas of agreement, and describing their differing proposals for any points on which they cannot agree. If there are disagreements and the parties file a joint status report, it shall be filed on or before December 15, 2025. The Court will further contact the parties to schedule a Zoom status conference. The Clerk of Court is directed to re-note the plaintiffs' motion to compel for December 15, 2025.

Dated this 3rd day of December, 2025.

Theresa L. Fricke
United States Magistrate Judge