UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C.C., as assignee, et al.,

                        Plaintiffs,

        v.

UNITED STATES FIDELITY &

GUARANTY COMPANY, et al.,

                        Defendants.

Case No. 3:24-cv-05535-TMC

ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
PARTIAL SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiffs are former residents of the Kiwanis Vocational Home ("KVH") who allege that they were physically and sexually abused during their time at KVH in the 1980s and 1990s. Dkt. 5 ¶ 4.17. At various times during this period, Defendants United States Fidelity & Guaranty Company ("USF&G"), Granite State Insurance Company ("Granite State"), Insurance Company of North America, and Federal Insurance Company (the latter two collectively, "Chubb") provided insurance to Kiwanis International ("Kiwanis"). Dkt. 90-1 at 17–125, 148–267; Dkt. 90-2; Dkt. 90-3; Dkt. 90-4 at 1–64; Dkt. 92-3. Although KVH was operated by a separate organization, Lewis County Youth Enterprises ("LCYE"), Plaintiffs allege that KVH was affiliated with Kiwanis as a "major service project." Dkt. 5 ¶ 4.16; *C.C. v. Kiwanis Int'l,*

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

568 P.3d 677, 679–80 (Wash. Ct. App. 2024), *review denied*, 4 Wn.3d 1030, 569 P.3d 736 (2025).

Decades after the alleged abuse, Plaintiffs brought lawsuits in Washington superior court against Kiwanis, former KVH executive director Charles McCarthy, former KVH interim executive director Guy Cornwell, and others. *Id.* ¶¶ 1.2–1.4; Dkt. 92-1 at 4–6. These lawsuits (the "Underlying Actions") resulted in covenant judgments between Plaintiffs, McCarthy, and Cornwell, under which McCarthy and Cornwell assigned their rights against Defendants to Plaintiffs. Dkt. 92-1 at 6–7; Dkt. 90-12 at 99–136. Plaintiffs then filed this action against Defendants. Dkt. 1.

Plaintiffs now seek partial summary judgment on four issues: (1) whether McCarthy and Cornwell are insured as Kiwanis members under certain policies issued by Defendants; (2) whether McCarthy and Cornwell are insured as Kiwanis affiliates under policies issued by USF&G and Granite State; (3) whether McCarthy and Cornwell are insured under certain policies issued by Chubb to the extent that their liability arises from Kiwanis activities or activities on Kiwanis's behalf; and (4) whether Washington's "continuous trigger" rule applies such that a Plaintiff's bodily injury would trigger coverage under a policy so long as the injury arose or continued during the time that policy was in effect. Dkt. 89 at 2–3. For the following reasons, the Court agrees with Plaintiffs that Cornwell was insured under the primary Chubb policies in effect from November 1988 to November 1991, but only for any Kiwanis activities or activities he undertook on Kiwanis's behalf. The Court therefore GRANTS summary judgment to Plaintiffs on that narrow issue. However, the Court DENIES summary judgment on all remaining issues raised by Plaintiffs.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

## II.    BACKGROUND

This litigation involves many insurance policies with different language and definitions for the policy terms therein. Below, the Court summarizes each policy that Defendants issued to Kiwanis during the relevant period.

### A.    USF&G policies

USF&G issued three primary insurance policies to Kiwanis during the relevant period: Policy 1CC A 97254, which ran from October 1977 to October 1980; Policy 1CC D 63876, which ran from October 1980 to October 1983; and Policy 1CC 017 254006, which ran from October 1983 to October 1985. Dkt. 90-1 at 16–39 (Policy ICC A 97254), 45–80 (Policy 1 CC D 63876), 81–101 (Policy 1CC D 63876); *see* Dkt. 91 at 4 (representing that Policy 1CC 017 254006 was canceled in October 1985).

Under these policies, a "Named Insured" included Kiwanis, Kiwanis members, local Kiwanis Clubs, Kiwanis Districts, Kiwanis Divisions, subsidiaries and affiliates, Kiwanis Club Foundations, Kiwanis District Foundations, Kiwanis International Foundations, Key Clubs and members, Circle K Clubs and members, Builder Clubs and members, Kewanettes, and volunteer workers. Dkt. 90-1 at 19, 52, 91. Each policy also included an endorsement defining "persons insured" to include "any member of the Named Insured but only with respect to his liability for activities of the Named Insured or activities performed by such member on behalf of the Named Insured." *Id.* at 28, 57, 94.

USF&G also issued Policy CEP 126205, a first-layer excess policy that ran from May 1980 to May 1981. *Id.* at 40–44. Under this policy, a "Named Insured" included "the person or organization named in Section 1.1 and . . . any subsidiary thereof and any other organization coming under the Named Insured's control and active management," so long as written notice was provided to USF&G. *Id.* at 43. An "insured" included anyone insured by an underlying

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

insurance policy "but only to the extent of the insurance afforded to such other person or organization by such underlying insurance." *Id.*

### B.    Granite State policies

Granite State issued three umbrella liability policies to Kiwanis during the relevant period: Policy 6680-7665, which ran from October 1, 1980 to October 1, 1981; Policy 6681-8744, which ran from October 1, 1981 to October 1, 1982; and Policy 6682-9861, which ran from October 1, 1982 to October 1, 1983. *Id.* at 103–13 (Policy 6680-7665), 114–20 (Policy 6681-8744), 121–25 (Policy 6682-9861). These policies defined "Named Assured" to include Kiwanis, Kiwanis members, local Kiwanis Clubs, Kiwanis Districts, Kiwanis Divisions, subsidiaries and affiliates, Kiwanis Club Foundations, Kiwanis District Foundations, Kiwanis International Foundations, Key Clubs and members, Circle K Clubs and members, Builder Clubs and members, Kewanettes, and volunteer workers. *Id.* at 111, 116, 123. Policy 6680-7665 also provided coverage to any person insured by the corresponding primary policy—here, USF&G Policy 1CC D 63876—"but not for broader coverage than is available" in the underlying policy. *Id.* at 105.

### C.    Chubb policies

The Court summarizes each policy issued by Chubb individually.

#### 1.    *Insurance Company of North America ("INA") Policy OGL G10790499*

This primary policy ran from November 1988 to November 1990. *Id.* at 148– 217. Under this policy, Named Insureds included Kiwanis, Kiwanis Club Foundations, Kiwanis District Foundations, Kiwanis International Foundations, Key Clubs, Circle K Clubs, Builders Clubs, Kewanettes, and Kiwanianne Clubs. *Id.* at 178, 186, 217. A Named Insured who was designated in the policy declarations as an individual was only covered by the policy "with respect to the conduct of a business of which [the Named Insured is] the sole owner." *Id.* at 156.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

Under this policy, members of a Named Insured organization were insured "only with respect to their liability for [the Named Insured's] activities or activities they perform on [the Named Insured's] behalf." *Id.* at 164. The policy defined "members" to include "the entire members of all entities listed under the heading 'Named Insured' as computed in accordance with the manuals in use by the company." *Id.* at 195.

### 2. *INA Policy XOO G10791455*

This umbrella liability policy ran from November 1988 to November 1989. Dkt. 90-2 at 105–30. Under this policy, the "Named Insured" was defined as "Kiwanis International and its owned, controlled, subsidiary or affiliated organizations now or hereafter constituted," which included local Kiwanis clubs, Kiwanis districts, Kiwanis divisions, Kiwanis club foundations, Kiwanis district foundations, Kiwanis international foundations, key clubs, circle K clubs, builder clubs, Kewanettes, and Kiwanianne clubs. *Id.* at 109–10.

### 3. *INA Policy SVP D16962351*

This primary policy ran from November 1990 to November 1994.[1] Dkt. 90-1 at 218–67; Dkt. 90-2 at 1–103.

From 1990 to 1991, the policy defined "Named Insureds" as "Kiwanis International and its owned, controlled, subsidiary or affiliated organizations now or hereafter constituted including" Kiwanis, Kiwanis Club Foundations, Kiwanis District Foundations, Kiwanis International Foundations, Key Clubs, Circle K Clubs, Builders Clubs, Kewanettes, Kiwanianne Clubs, Kiwanis Districts, Kiwanis Divisions, and local Kiwanis Clubs. Dkt. 90-1 at 230. From 1992 to 1994, the policy included a nearly identical definition of "Named Insured," except that it did not name Kiwanianne Clubs or local Kiwanis Clubs. Dkt. 90-2 at 51, 65.

---

[1] Information regarding the policy's definitions of "Insured" and "Named Insured" from 1991 to 1992 is not included in the record before the Court. *See* Dkt. 90-1 at 218–67; Dkt. 90-2 at 1–103.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

From 1990 to 1991 and 1993 to 1994, the policy defined "Insured" to include members of any Named Insured, "but only with respect to their liability for [the Named Insured's] activities or activities they perform on [the Named Insured's] behalf." Dkt. 90-1 at 248; Dkt. 90-2 at 83. The policy did not include this provision from 1992 to 1993. *See* Dkt. 90-2 at 51–54.

   4. *INA Policy XOO G14552467*

This umbrella liability policy ran from November 1990 to November 1991. *Id.* at 132–36; Dkt. 90-3 at 1–18. The policy defined "Named Insured" as "Kiwanis International and its owned, controlled, subsidiary or affiliated organizations now or hereafter constituted," which included local Kiwanis Clubs, Kiwanis Districts, Kiwanis Divisions, Kiwanis Club Foundations, Kiwanis District Foundations, Kiwanis International Foundations, Key Clubs, Circle K Clubs, Builder Clubs, Kewanettes, and Kiwanianne Clubs. Dkt. 90-3 at 13.

   5. *INA Policy XOO G15589760*

This umbrella liability policy ran from November 1991 to November 1994. Dkt. 90-2 at 52; Dkt. 90-3 at 19–122; Dkt. 90-4 at 1–11. From 1991 to 1992, the policy defined "Named Insured" as "Kiwanis International and its owned, controlled, subsidiary or affiliated organizations now or hereafter constituted," which included local Kiwanis Clubs, Kiwanis Districts, Kiwanis Divisions, Kiwanis Club Foundations, Kiwanis District Foundations, Kiwanis International Foundations, Key Clubs, Circle K Clubs, Builder Clubs, Kewanettes, and Kiwanianne Clubs. Dkt. 90-3 at 45. From 1993 to 1994, the policy had a nearly identical definition of "Named Insured" but did not include Kiwanianne Clubs. *Id.* at 110.

The record contains contradictory definitions of "Named Insured" under the November 1992 to November 1993 version of the policy. One document shows that the policy defined "Named Insured" identically to the underlying policy, SVP D16962351. Dkt. 90-2 at 52. Another document shows that the policy defined "Named Insured" to include Kiwanis members,

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

Kiwanis Clubs, Kiwanis Districts, Kiwanis Divisions, Kiwanis Club Foundations, Kiwanis District Foundations, Kiwanis International Foundations, Key Clubs and members, Circle K Clubs and members, Builders Clubs and members, Kewanettes, and non-member volunteer workers. Dkt. 90-3 at 70.

      6.    *Federal Insurance Company ("Federal") policy 7909-28-88*

This second-layer excess liability policy ran from March 1990 to November 1994. Dkt. 90-4 at 13–64. Policy (91) 7909-28-88, which ran from November 1990 to November 1991, defined "Named Insured" as "Kiwanis International and its owned, controlled, subsidiary or affiliated organizations now or hereafter constituted," which included Kiwanis members, local Kiwanis Clubs, Kiwanis Districts, Kiwanis Divisions, Kiwanis Club Foundations, Kiwanis District Foundations, Kiwanis International Foundations, Key Clubs and members, Circle K Clubs and members, Builders Clubs and members, Kewanettes, Kiwanianne Clubs and members, and non-member volunteer workers. *Id.* at 28. This definition is not included in the other versions of this policy running from March 1990 to November 1990, November 1991 to November 1992, November 1992 to November 1993, and November 1993 to November 1994. *See id.* at 21–23, 30–64.

Insurance coverage under Policy (91) 7909-28-88 applied "only excess" of its underlying policy, INA Policy XOO G14552467, and it incorporated the "terms, conditions, definitions, endorsements, exclusions, and limitations" of that policy. *Id.* at 13, 26. Policy (93) 7909-28-88, which ran from November 1992 to November 1993, also incorporated the "terms, conditions, definitions, endorsements, exclusions, and limitations" of its underlying policy, INA Policy XOO G15589760. *Id.* at 30, 32. Policy (94) 7909-28-88, which ran from November 1993 to November 1994, "follow[ed] the terms and conditions of" INA Policy XOO G15589760. *Id.* at 53, 55.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

**D.      State court litigation**

In 2022, the superior court in one of the Underlying Actions concluded that Kiwanis lacked an actual or apparent agency relationship with KVH and granted summary judgment to Kiwanis on that issue. Dkt. 94 at 59–61, 64–65. The Washington Court of Appeals reversed that ruling, concluding that "there is a genuine issue of material fact regarding whether an actual agency relationship between KVH and Kiwanis International existed . . . [and] whether an apparent agency relationship between KVH, Kiwanis International, and the local clubs existed." *C.C.*, 568 P.3d at 679.

First, the court determined that an actual agency relationship may have existed because "Kiwanis International had the right to control certain aspects of KVH operations, including employment matters." *Id.* ¶ 91. Specifically, the court concluded that "there is a genuine issue of material fact regarding whether Kiwanis International had the right [to] control the manner in which KVH made employment decisions and the manner in which the [KVH] boards implemented rules regarding the treatment and supervision of residents." *Id.* ¶ 93.

As for apparent agency, the court reasoned that there is "a genuine issue of material fact regarding whether Kiwanis International and the local [Kiwanis] clubs made objective manifestations that led the State to believe that Kiwanis International and the local clubs were the principals of KVH." *Id.* ¶ 120. It further determined that "there is a genuine issue of material fact regarding whether the State relied on the apparent agency relationship between Kiwanis International and the local clubs as principals and KVH as their agent to the State's detriment." *Id.* ¶ 124.

The question of whether KVH and Kiwanis had any kind of agency relationship remains unresolved in the Underlying Actions.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

**E.    Procedural history**

On July 3, 2024, Plaintiffs filed suit in this matter. Dkt. 1. Two weeks later, Plaintiffs filed an amended complaint alleging that Defendants are liable for breach of contract, negligence, bad faith, violations of the Consumer Protection Act, and violations of the Insurance Fair Conduct Act. Dkt. 5 ¶¶ 5.1–11.1.

On July 1, 2025, Plaintiffs moved for partial summary judgment. Dkts. 89–90. On July 23, USF&G, Granite State, and Chubb each responded in opposition to the motion. Dkts. 91–97. On July 29, Plaintiffs filed a reply. Dkts. 98–100. The motion is now ripe for the Court's review.

### III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In an insurance case, "[t]he party asserting coverage bears the burden of proving the loss is a covered occurrence within the policy period." *Walla Walla Coll. v. Ohio Cas. Ins. Co.*, 149 Wn. App. 726, 730, 204 P.3d 961 (2009). "If such a showing has been made, the insurer can nevertheless avoid liability by showing the loss is excluded by specific policy language." *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 431–32, 38 P.3d 322 (2002). Where, as here, the party moving for summary judgment "will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

the moving party." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)).

The evidence relied upon must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Ev. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presume[d]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). However, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). Consequently, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan*, 497 U.S. at 888 (internal quotations omitted).

Interpretation of insurance policy terms is a question of law. *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 512, 276 P.3d 300 (2012). An insurance policy "must be read as the average person would read it; it should be given a 'practical and reasonable rather than a literal interpretation', and not a 'strained or forced construction' leading to absurd results." *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 272, 267 P.3d 998 (2011) (quoting *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 341, 738 P.2d 251 (1987)). The policy must be considered as

a whole, and "if the policy language is clear and unambiguous, [courts] must enforce it as written; [courts] may not modify it or create ambiguity where none exists." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). Undefined policy terms are assigned their ordinary meanings, and any ambiguities should be "construed against the drafter-insurer." *Vision One*, 174 Wn.2d at 512. Any exclusions should also be strictly construed against the insurer. *Id.*

## IV.    DISCUSSION

Defendants move to strike many of Plaintiffs' exhibits, arguing that they were not disclosed earlier in litigation, are improperly authenticated, and contain inadmissible hearsay. In addition, Chubb argues that summary judgment would be premature because its duty to indemnify McCarthy and Cornwell depends on the resolution of facts that are currently being litigated in state court. Before reaching the merits of Plaintiffs' motion, the Court discusses these evidentiary and procedural objections.

**A.    The Court strikes Plaintiffs' Exhibits 10, 11, 21, 22, 32, 34–36, 43, 44, 46, 48, 52, 67, and 80–84 because Plaintiffs failed to produce them before filing the motion for summary judgment and did not show that this failure was substantially justified or harmless.**

USF&G argues that the Court should exclude 79 of Plaintiffs' 84 exhibits under Federal Rule of Civil Procedure 37(c)(1) because Plaintiffs failed to disclose them to Defendants before moving for summary judgment. Dkt. 91 at 11–12. USF&G identifies five exhibits that Plaintiffs produced in this litigation and 16 exhibits that it obtained in another matter. *Id.* App'x A. In addition, it identifies 29 exhibits that were "possibly produced in [this] litigation" and 15 exhibits that were "possibly obtained by USF&G in another matter," meaning that USF&G has copies of those documents with different Bates numbers. *Id.* Finally, it lists 19 exhibits that were neither produced in this matter nor obtained elsewhere. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

Plaintiffs do not dispute that they failed to disclose certain exhibits before moving for summary judgment. *See* Dkt. 98 at 12. Instead, they argue that such failure is harmless because Defendants "have been aware of and involved in the defense of" the related state court litigation. *Id.*

Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by [Federal Rule of Civil Procedure] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Required disclosures under Rule 26(a) include "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii).

"Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1073 (9th Cir. 2022) (quoting *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012)). Factors bearing on harmlessness include "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (quoting *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017)).

While Plaintiffs assert that none of their proffered evidence "is new or a surprise" to Defendants, they do not identify which of these documents were produced in state court

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

litigation involving these Defendants. Dkt. 98 at 12. Nor do they make any argument that their failure to produce these documents was justified. *Id.* Plaintiffs' vague statements regarding Defendants' knowledge of underlying facts do not meet their burden of proving that their failure to disclose was harmless. However, USF&G concedes that it already possessed copies of 60 of the 79 challenged exhibits, albeit with different Bates numbers on 34 documents. *See* Dkt. 91 App'x A. The Court therefore concludes that Plaintiffs' failure to produce those 60 documents was not prejudicial. The Court strikes the 19 exhibits that USF&G identifies as having neither been produced in this litigation or in another matter: Exhibits 10, 11, 21, 22, 32, 34–36, 43, 44, 46, 48, 52, 67, and 80–84.

**B.      The Court declines to strike Plaintiffs' evidence on the basis of Defendants' hearsay and authentication objections.**

Defendants also object to many of Plaintiffs' exhibits on the grounds that they are improperly authenticated or contain inadmissible hearsay.[2] Dkt. 91 at 12–13; Dkt. 93 at 23–25; Dkt. 95 at 5–7.

At the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Once such an objection has been lodged, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Id.* advisory committee's note to 2010 amendment.

When evaluating these objections, the Court focuses on whether the content of the evidence—not its form—may be admissible at trial. *Sandoval v. County of San Diego*, 985 F.3d

---

[2] Granite State also objects to Exhibits 32–37 and 77 on the basis that they "consist of allegations and assertions of Plaintiffs' counsel." Dkt. 95 at 7. The Court has stricken some of these documents under Rule 37(c)(1). *See infra* Part IV.A. As for the remaining documents, the Court does not consider them for the truth of the matters asserted therein.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

657, 666 (9th Cir. 2021). This means that "[i]f the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it." *Id.* This principle applies regardless of which party submitted the challenged evidence. *Cont'l Cas. Co. v. Heredia*, No. C24-0917-JCC, 2025 WL 2161543, at *2 (W.D. Wash. July 30, 2025).

Here, Defendants do not argue that Plaintiffs' exhibits could not be presented in an admissible form at trial; they merely assert that the challenged exhibits are inadmissible as currently presented. *See* Dkt. 91 at 12–13; Dkt. 93 at 23–25; Dkt. 95 at 5–7. These objections, based on form rather than contents, are "premature" at this stage and do not warrant exclusion of the proffered evidence. *See Zimmerman v. PeaceHealth*, No. 3:22-CV-05960, 2025 WL 2458051, at *12 (W.D. Wash. Aug. 26, 2025); *see also Floyd v. Saber Fitness Hegenberger*, LLC, No. 24-CV-01278-TSH, 2025 WL 2173413, at *8 (N.D. Cal. July 31, 2025) ("[D]istrict courts in this circuit have routinely overruled authentication and hearsay challenges at the summary stage where the evidence could be presented in an admissible form at trial." (alteration in original) (quoting *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1232 (N.D. Cal. 2018))). However, the Court notes that Plaintiffs rely on several pieces of evidence that are decades old, and Plaintiffs do not explain how they intend to present that evidence in an admissible form before a jury. *See, e.g.*, Dkt. 90 at 20–39. The Court's decision to consider the evidence on summary judgment does not mean that the Court will deem this evidence admissible at trial, absent a showing from Plaintiffs that the evidence may be admitted.

C.    **The Court does not decide whether any duty to indemnify exists.**

Chubb seeks denial of Plaintiffs' motion under Federal Rule of Civil Procedure 56(d). Dkt. 93 at 22–23. Under this rule, if a party opposing a motion for summary judgment "shows by

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Chubb argues that the dispute in this case concerns only its duty to indemnify, not its duty to defend, and relief under Rule 56(d) is warranted because it cannot present all relevant facts to oppose the motion for summary judgment until those facts have been adjudicated in state court. Dkt. 93 at 11–13, 22–23. Plaintiffs disagree, arguing that Chubb has failed to identify the specific facts it needs to oppose the motion and that the motion does not seek a ruling that Defendants had a duty to indemnify McCarthy and Cornwell. Dkt. 98 at 4–5, 13.

Chubb is correct that this case concerns only its duty to indemnify. In the Amended Complaint, Plaintiffs' only factual allegations related to the duty of defend are (1) "USF&G unreasonably denied McCarthy's and Cornwell's defense tenders under the primary policies issued by USF&G" and (2) "[a]lthough INA purportedly agreed to defend McCarthy under the primary policies, it neither retained defense counsel to represent him, nor paid any portion of his defense costs." Dkt. 5 ¶¶ 4.28, 4.30. Plaintiffs do not allege that Chubb, via either INA or Federal, disputes its duty to defend McCarthy and Cornwell. Therefore, the only insurer for which the duty of defend is disputed is USF&G.

This distinction is important because "[t]he duty to indemnify exists only if the insurance policy actually covers the insured's liability, whereas the duty to defend arises when the policy could *conceivably* cover allegations in a complaint." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 182, 400 P.3d 1234 (2017), *as modified* (Aug. 16, 2017). "The duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014), *as corrected* (Aug. 6, 2014). A summary judgment ruling on the duty to indemnify, however, is

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 15

"premature" when factual issues that may preclude coverage remain in dispute. *Indian Harbor Ins. Co. v. City of Tacoma Dep't of Pub. Utils.*, 354 F. Supp. 3d 1204, 1215 (W.D. Wash. 2018); *State Farm Fire & Cas. Co. v. Doucette*, No. C16-5169BHS, 2016 WL 4793294, at *4 (W.D. Wash. Sept. 14, 2016).

The declaration of Jonathan Torren, attached to Chubb's opposition brief, states that "Chubb cannot present all facts relevant to opposing Plaintiffs' motion because the relevant facts—including, in particular, whether Kiwanis International controlled LCYE— have not yet been determined in the Underlying Actions." Dkt. 94 ¶ 18. Because the question of Kiwanis's relationship to KVH remains unresolved in the Underlying Actions, the Court cannot and does not adjudicate Defendants' duties to indemnify McCarthy and Cornwell at this time. However, the Court agrees with Plaintiffs that the question of whether McCarthy and Cornwell are insureds under Chubb policies is a different, preliminary question from whether any duty to indemnify exists. A court may interpret policy language on a motion for partial summary judgment, even where "issues of fact remain in the broader case," so long as those disputed factual issues do not "implicate interpretation of the policy language" itself. *Sixty-01 Ass'n of Apartment Owners v. Pub. Serv. Ins. Co.*, No. C22-1373-JCC, 2023 WL 5152666, at *2 (W.D. Wash. Aug. 10, 2023). Based on the information already before the Court, the Court may determine whether McCarthy and Cornwell were insured for activities performed on Kiwanis's behalf without reaching the question of whether they actually performed any such activities. Therefore, "the Court declines [Chubb's] invitation to postpone ruling on these issues." *Id.*

**D.      Plaintiffs have not established that McCarthy and Cornwell are insured as Kiwanis members under policies issued by Defendants.**

Plaintiffs first seek summary judgment on the question of whether McCarthy and Cornwell are insured as Kiwanis members under the USF&G policies, the Granite State policies, and certain Chubb policies. Dkt. 89 at 12–15.

*1.      Plaintiffs have not shown that McCarthy and Cornwell were Kiwanis members during the coverage periods of the USF&G and Granite State policies.*

Granite State argues that Plaintiffs have failed to show that McCarthy and Cornwell were members of Kiwanis during its policy periods.[3] Dkt. 95 at 8–15. Although USF&G does not dispute McCarthy and Cornwell's Kiwanis membership, because Plaintiffs bear the burden of proof the Court also considers this argument with regard to USF&G's policy periods, which overlap with Granite State's. *See* Dkt. 91 at 5–6.

The Court agrees with Granite State that Plaintiffs have not submitted sufficient evidence to establish that McCarthy was a Kiwanis member during the USF&G and Granite State policy periods, which spanned from 1980 to 1985. McCarthy testified that he was a Kiwanis member "[j]ust when [KVH] was formed" and that he was a member of the Centralia Kiwanis Club "[f]or a short time." Dkt. 90-6 at 94; Dkt. 90-7 at 75. In a declaration he submitted in the Underlying Actions, McCarthy stated that LCYE was incorporated in 1977, and he became Executive Director of KVH in 1978. Dkt. 96-5 ¶¶ 1–2. Other testimony in the record regarding McCarthy's Kiwanis membership is vague or speculative. *See* Dkt. 90-6 at 131 (testimony from Dale

---

[3] Granite State seeks relief under Rule 56(d) because Plaintiffs failed to respond to its discovery requests, and Granite State "anticipates that Plaintiffs' eventual discovery responses (and potential deposition) will confirm that neither [McCarthy nor Cornwell] was a member or affiliate of Kiwanis during the period of the Granite State policies." Dkt. 95 at 7–8. Because the Court determines that Plaintiffs have not offered sufficient evidence that either individual was a Kiwanis member during the policy periods, the Court denies Granite State's 56(d) request as moot.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT
- 17

Shannon that he "believe[d]" McCarthy was a member of a Kiwanis club); Dkt. 90-8 at 17 (testimony from Cornwell that McCarthy had "been a Kiwanian for a long time").

Moreover, it is undisputed that Cornwell was not a Kiwanis member during the USF&G and Granite State policy periods. In a deposition submitted by Plaintiffs, Cornwell testified that he likely became a Kiwanis member "a few months after" he began his employment with KVH in 1986. Dkt. 90-9 at 76; *see* Dkt. 89 at 7. And Granite State offers both a letter from Cornwell's counsel stating that Cornwell was a Kiwanis member during his employment at KVH from 1986 to 1991 and a declaration by Cornwell stating that "[u]ntil 1986 [he] had never heard of KVH and had no knowledge of its existence." Dkt. 96-4 at 3; Dkt. 97-9 at 2–3. In the reply brief, Plaintiffs concede that "Cornwell was not a Kiwanis member until he began employment at KVH." Dkt. 98 at 6.

Because Cornwell was not a Kiwanis member during the USF&G and Granite State policy periods, he was not insured as a Kiwanis member under those policies. And because there is insufficient evidence to show that McCarthy was a member during that time, the Court cannot grant summary judgment to Plaintiffs on this issue.

2.    *Any coverage for Kiwanis members under the USF&G and Granite State policies is limited to liability for Kiwanis's activities or activities they performed on Kiwanis's behalf.*

Even if McCarthy were a Kiwanis member during the USF&G and Granite State policy periods, it does not follow that he was insured under those policies for activities unrelated to his affiliation with Kiwanis. The USF&G policies list "Kiwanis members" as Named Insureds, but they also include an endorsement defining "persons insured" to include "any member of the Named Insured but only with respect to his liability for activities of the Named Insured or activities performed by such member on behalf of the Named Insured." Dkt. 90-1 at 19, 28, 52, 57, 91, 94. Plaintiffs argue that any ambiguity created by these two provisions should be

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 18

interpreted in favor of coverage. Dkt. 89 at 14. But adopting an expansive, unrestricted reading of the coverage afforded to Kiwanis members as Named Insureds would render the "persons insured" endorsement superfluous, going against the directive that courts read an insurance policy as a whole. *Quadrant Corp.*, 154 Wn.2d at 171. And reading either the USF&G or Granite State policies as providing coverage to Kiwanis members for all activities—even those unrelated to their status as Kiwanis members—would lead to an absurd result. *See Moeller*, 173 Wn.2d at 272. As Granite State asserts in its brief, "Plaintiffs' interpretation would effectively and retroactively transform Kiwanis into an unlicensed insurance broker, placing insurance on behalf of its members for personal and professional risks that Kiwanis does not itself share." Dkt. 95 at 19. Plaintiffs ask the Court to adopt a strained interpretation that would provide expansive coverage to anyone who happened to join a Kiwanis club, rather than a "practical and reasonable" interpretation that Kiwanis members are insured for liability arising from their connection with Kiwanis. *See Moeller*, 173 Wn.2d at 272. The Court declines to adopt Plaintiffs' construction, and partial summary judgment on this basis is denied.

> 3.    *Plaintiffs have not shown that McCarthy and Cornwell were insured as Kiwanis members under certain Chubb policies.*

Plaintiffs argue that McCarthy and Cornwell are insureds under Federal Policy (91) 7909-28-88 and the 1992 to 1993 iterations of INA Policies SVP D16962351 and XOO G15589760 because those policies each included an endorsement listing "Kiwanis members" as "Named Insureds."[4] Dkt. 89 at 12. Plaintiffs refer to these as the "Chubb No-

---

[4] Documents in the record suggest that INA Policies SVP D16962351 and XOO G15589760 each contained an "abuse or molestation" exclusion. Dkt. 90-2 at 47; Dkt. 90-3 at 76. The parties have not raised the existence of these exclusions in their briefing. The burden of proving the application of a policy exclusion lies with the insurer. *Windcrest Owners Ass'n v. Allstate Ins. Co.*, 24 Wn. App. 2d 866, 871, 524 P.3d 683 (2022). Nothing in this order should be construed as a ruling on the applicability of these exclusions.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 19

Agency Policies." *Id.* Chubb responds that McCarthy and Cornwell cannot be insureds under these policies because the "Named Insured" endorsements in these policies apply only to organizations, not individuals. Dkt. 93 at 14–15.

As with the USF&G and Granite State policies, it is not clear that McCarthy and Cornwell were Kiwanis members during all relevant policy periods: 1990 to 1991 (Federal Policy (91) 7909-28-88) and 1992 to 1993 (INA Policies SVP D16962351 and XOO G15589760). Again, the letter from Cornwell's counsel offered by Granite State asserts that he was a Kiwanis member only from 1986 to 1991, placing his membership in the policy period for Federal Policy (91) 7909-28-88 but not the other two policies, Dkt. 97-9 at 2–3, and the time period of McCarthy's membership in Kiwanis is not clear.

Even assuming that McCarthy and Cornwell were both Kiwanis members from 1990 to 1993, Plaintiffs have not shown that McCarthy and Cornwell were insured under these policies as Kiwanis members. At the outset, it is not clear that two of the policies named by Plaintiffs contain the endorsement that Plaintiffs describe. The "Named Insured" endorsement to the 1992–93 iteration of INA Policy SVP D16962351 does not include Kiwanis members. *See* Dkt. 90-2 at 51. And as explained above, there are two documents in the record that appear to be the "Named Insured" endorsement for INA Policy XOO G15589760, and they contain contradictory information as to whether Kiwanis members are included. *Id.* at 52; Dkt. 90-3 at 70. Without clear policy language identifying Kiwanis members as Named Insureds, the Court cannot grant summary judgment to Plaintiffs on this issue.

By contrast, Federal Policy (91) 7909-28-88 did identify "Kiwanis members" as Named Insureds, and its list of Named Insured entities, which included various Kiwanis-affiliated clubs "and members" along with "non-member volunteer workers," clearly contemplated that the word "member" could apply to individuals. Dkt. 90-4 at 28. But as explained above, reading this

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 20

policy to afford expansive coverage to Kiwanis members unrelated to their status as such would lead to an absurd result. Regardless, this policy applied only excess of INA Policy XOO G14552467, which did not include Kiwanis members as Named Insureds. Dkt. 90-3 at 13; Dkt. 90-4 at 13, 26; *see Quellos Grp. LLC v. Fed. Ins. Co.*, 177 Wn. App. 620, 623, 312 P.3d 734 (2013) ("An excess insurance policy provides coverage only after underlying insurance coverage is exhausted."). Plaintiffs do not argue that McCarthy and Cornwell were insured under XOO G14552467. In the absence of evidence that McCarthy and Cornwell were insured under XOO G14552467, the Court cannot say that Federal Policy (91) 7909-28-88 provided them coverage.

> **E.    Plaintiffs have not established that McCarthy and Cornwell are insured as Kiwanis affiliates under policies issued by USF&G and Granite State.**

Next, Plaintiffs ask the Court to rule that McCarthy and Cornwell are insured under the USF&G and Granite State policies as Kiwanis affiliates. Dkt. 89 at 15–16. Plaintiffs point to the policies' definition of "Named Insured," which includes "Subsidiaries and Affiliates." *Id.* at 15. They argue that the ordinary dictionary definition of the word "affiliate" should guide the Court's interpretation of the policy language. *Id.* at 15–16. In response, USF&G urges the court to interpret "affiliates" alongside "subsidiaries" to refer to "corporate Kiwanis entities" rather than individuals. Dkt. 91 at 6–7. Granite State similarly argues that the common usage of the noun "affiliate" is in reference to companies and organizations rather than individuals. Dkt. 95 at 21–25.

In the policy, the term "affiliates" appears alongside the word "subsidiaries" and should be interpreted in that context. *See Certification From U.S. Dist. Ct. ex rel. W. Dist. of Wash. v. GEICO Ins. Co.*, 184 Wn.2d 925, 930, 366 P.3d 1237 (2016) (explaining that courts should "not interpret a phrase in isolation" and should "give[] effect to each provision"). Therefore, the Court considers the common meanings of these two words together. Merriam-Webster's Dictionary

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 21

defines "affiliate" as a "person or organization" that is associated with or closely connected to an entity. *Affiliate*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/affiliate (last visited Dec. 30, 2025). In other words, the common meaning of affiliate includes both natural persons and corporate entities. But "subsidiary" means "one that is subsidiary[,] especially: a company wholly controlled by another." *Subsidiary*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/subsidiary (last visited Dec. 30, 2025). Read in context, the word "affiliates" is narrowed by its neighbor "subsidiaries" to include only part of its common meaning: organizations that are affiliated with Kiwanis. Because McCarthy and Cornwell are natural persons, they are not insured as "affiliates" under the USF&G and Granite State policies.

> **F.    Cornwell is an insured under the primary Chubb policies in effect from November 1988 to November 1991, but only for Kiwanis activities or activities that he performed on Kiwanis's behalf.**

Next, Plaintiffs seek a ruling that McCarthy and Cornwell are insured under the Chubb policies in effect from November 1988 to November 1991—namely, INA policies OGL G10790499 and SVP D16962351—under the endorsement contained in both policies that provided coverage for members of any Named Insured, "but only with respect to their liability for [the Named Insured's] activities or activities they perform on [the Named Insured's] behalf." Dkt. 89 at 16–17; *see* Dkt. 90-1 at 164, 195, 248. Chubb agrees that these policies provide insurance for Kiwanis members for Kiwanis activities or activities that they perform on Kiwanis's behalf, but it maintains that Plaintiffs' request is not yet ripe because the underlying factual issues have not yet been adjudicated in the state court litigation. Dkt. 93 at 7, 18–19.

As the Court explained above, it is possible to determine whether McCarthy and Cornwell were insured as Kiwanis members for Kiwanis activities without reaching issues of fact that remain unresolved in the Underlying Actions. *See supra* Subsection IV.C. Because the

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 22

parties agree that the policies at issue provided limited coverage for Kiwanis members, the availability of coverage to McCarthy and Cornwell depends on whether they were Kiwanis members during the policy periods.

In at least one of the relevant policies, "members" was defined to include "the entire members of all entities listed under the heading 'Named Insured' as computed in accordance with the manuals in use by the company." Dkt. 90-1 at 195. Chubb does not dispute that McCarthy and Cornwell were members of local Kiwanis clubs at certain times. *See* Dkt. 93 at 3. Plaintiffs have not demonstrated that McCarthy was a Kiwanis club member during the coverage periods for these Chubb policies, and thus the Court cannot rule that he was insured under these policies as a Kiwanis member. However, because the parties do not dispute that Cornwell was a Kiwanis member from 1986 to 1991, Plaintiffs have demonstrated that he was insured under the November 1988 to November 1991 primary Chubb policies only for any Kiwanis activities or activities that he may have performed on Kiwanis's behalf.

In making this determination, the Court does not decide whether Cornwell actually acted as an agent of Kiwanis or performed any activities that would have fallen within the scope of coverage, nor does the Court make any ruling regarding the relationship between Kiwanis and KVH or LCYE. The Court's narrow holding is that because Cornwell was a Kiwanis member between 1988 and 1991, the primary Chubb policies in effect during that time would have provided coverage to him if he performed any Named Insured's activities or activities on a Named Insured's behalf.

G. **Plaintiffs have not met their burden of establishing coverage under Washington's continuous trigger rule.**

Finally, Plaintiffs seek a ruling that Washington's continuous trigger rule imposes liability under a given policy if any Plaintiff's injury "began or continued to occur" during that

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 23

policy period. Dkt. 89 at 17–20. Under the continuous trigger rule, "when an insured sustains continuous damages all insurers providing coverage for any portion of the total time period of the continuing damage are jointly and severally liable for the entire amount of damage." *Baker v. Fireman's Fund Ins. Co.*, 5 Wn. App. 2d 604, 619, 428 P.3d 155 (2018) (citing *Am. Nat'l Fire Ins. Co. v. B & L Trucking & Const. Co.*, 134 Wash. 2d 413, 424, 951 P.2d 250 (1998)). Plaintiffs assert that the rule applies to continuous bodily injury, including emotional distress with physical manifestations, that results from prior sexual abuse. Dkt. 89 at 18–20. Chubb responds that emotional distress following sexual abuse is not the kind of "ongoing process" of damage contemplated by the rule. Dkt. 93 at 19–22 (quoting *Villella v. Pub. Emps. Mut. Ins. Co.*, 106 Wn.2d 806, 811, 725 P.2d 957 (1986)). USF&G argues that even if the continuous trigger rule could apply to sexual abuse claims, a ruling here would be premature and hypothetical because Plaintiffs have not submitted any evidence proving or even alleging that they experienced physical manifestations of emotional distress. Dkt. 91 at 10–11.

Washington courts have applied the continuous trigger rule to "undiscovered, progressively worsening condition[s]" such as dry rot, leaching chemicals, and water damage. *Villella*, 106 Wn.2d at 811; *see, e.g.*, *Gruol Const. Co. v. Ins. Co. of N. Am.*, 11 Wn. App. 632, 635–37, 524 P.2d 427 (1974) (dry rot); *Am. Nat'l Fire Ins. Co.*, 134 Wn.2d at 423–26 (pollutants leaching from landfill); *Certain Underwriters at Lloyd's London v. Valiant Ins. Co.*, 155 Wn. App. 469, 474, 229 P.3d 930 (2010) ("continuous and repeated exposure . . . to harmful moisture that gradually intruded through the building envelope over a five year period"); *Baker*, 5 Wn. App. 2d at 619 (pollutants leaching from landfill).

But courts have declined to apply the rule where there is "no 'continuing process' of damage" or where the insured was on notice that the damage was occurring. *See, e.g.*, *Villela*, 106 Wn.2d at 811–12 (declining to apply the continuous trigger rule where negligent installation

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 24

of a drainage system did not cause property damage until after the expiration of the policy period); *Swift v. Am. Home Assur. Co.*, 22 Wn. App. 777, 780, 591 P.2d 1216 (1979) (concluding that an insurance agent's negligent failure to include a church parsonage in a fire insurance policy, leading to lack of coverage when the parsonage burned down, was not a continuing act); *City of Okanogan v. Cities Ins. Ass'n of Wash.*, 72 Wn. App. 697, 703, 865 P.2d 576 (1994) (concluding that continuous trigger rule did not apply where insured was on notice of damage); *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 426–27, 38 P.3d 322 (2002) ("Under some circumstances PCB contamination may very well be the kind of invisible, slow process that leads to an unexpected and unintended damage. But here the facts are different. In this situation the insureds knew of the contamination, and the process was not invisible from their standpoint.").

The Court agrees with USF&G that Plaintiffs have submitted insufficient evidence to support the application of the continuous trigger rule at this stage of the litigation. As evidence of their injuries, Plaintiffs rely primarily on exhibits that the Court has stricken from the record. Dkt. 89 at 19; Dkt. 98 at 10; *see supra* Subsection IV.A (striking Exhibits 32, 34, 35, and 36). In the reply, Plaintiffs cite allegations contained in two complaints in the Underlying Actions. Dkt. 98 at 10; Dkt. 90-5 at 7; Dkt. 90-6 at 61. But these vague allegations of emotional distress, which have not been adjudicated in the Underlying Actions, are not enough to support a ruling that Defendants have a duty to indemnify Plaintiffs based on any continuing emotional injuries. *See Xia*, 188 Wn.2d at 182.

Moreover, it is not clear that emotional injury resulting from a discrete act or acts of sexual abuse constitutes continuous, worsening conditions in the same way that dry rot or landfill pollution does. *See Allstate Ins. Co. v. Cameron*, No. C05-1312JLR, 2006 WL 314337, at *5–6 (W.D. Wash. Feb. 8, 2006) (declining to apply continuous trigger rule when a battery resulted in the victim's death years later because the battery "was not continuous; it was discrete").

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 25

Plaintiffs cite four cases from this district for the proposition that the continuous trigger rule "applies specifically to allegations of ongoing physical and emotional effects caused by prior sexual abuse." Dkt. 89 at 18–19. But each of these cases applied in the context of the duty to defend or involved interpretations of specific policy language and evidence of injury in the summary judgment record. *See Liberty Mut. Ins. Co. v. Lange*, No. C20-0309JLR, 2023 WL 4704712, at *6–8 (W.D. Wash. July 24, 2023) (denying an insurer's motion for summary judgment that it had no duty to defend against claims regarding physical manifestations of emotional distress resulting from earlier abuse because those claims were "conceivably covered" by the applicable insurance policies); *Markel Ins. Co. v. Secret Harbor*, No. C23-0158-KKE, 2024 WL 381178, at *2–3 (W.D. Wash. Feb. 1, 2024) (declining to rule on an insurer's duty to indemnify for sexual abuse that occurred before the relevant policy period); *St. Paul Fire & Marine Ins. Co. v. Highline Sch. Dist. No. 401*, No. C17-1917 TSZ, 2018 WL 4205019, at *2–3 (W.D. Wash. Sept. 4, 2018) (denying an insurer's motion for summary judgment that it had no duty to defend because it was conceivable that bodily injury arising from sexual assault had occurred during the coverage period); *Markel Ins. Co. v. Secret Harbor*, No. C23-0158-KKE, 2025 WL 745566, at *5 (W.D. Wash. Mar. 7, 2025) (considering specific policy language defining bodily injury and specific evidence of injuries occurring during the policy periods to conclude that an insurer was not entitled to summary judgment on the duty to indemnify an insured related to claims of sexual abuse by the insured's employees). Those cases, which are narrow in scope, do not support a sweeping, hypothetical ruling that the continuous trigger rule applies to severe emotional distress caused by sexual abuse.

At its heart, Plaintiffs' position would functionally require that "any policy purchased at any time after an act of sexual abuse provides full coverage for the life of the victim." *Bishop of Charleston v. Century Indem. Co.*, 225 F. Supp. 3d 554, 566 (D.S.C. 2016). There is insufficient

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 26

evidence in the record for the Court to adopt this "extraordinary proposition" at this stage of litigation. *Id.* The Court expresses no opinion on whether Plaintiffs may later be able to prove coverage under individual policies based on specific evidence of bodily injury to their clients.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the motion for partial summary judgment (Dkt. 89). As a Kiwanis member, Guy Cornwell was insured under the primary Chubb policies in effect from November 1988 to November 1991 for any Kiwanis activities or activities he did on Kiwanis's behalf. The motion is otherwise denied.

Dated this 23rd day of January, 2026.

Tiffany M. Cartwright
United States District Judge